FILED
2016 NOV 28 P 12:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

Benjamin Murrell

Inmate Identification Number: 188477

_____

(Enter above the full name of the plaintiff
in this action)

.vs.

Ivan Pricvarov
Hugh M. Hood

_____

(Enter above full name(s) of the defendant(s)
in this action)

> **NOTICE TO FILING PARTY**
>
> *It is your responsibility to notify the clerk in writing of any address change.*
>
> *Failure to notify the clerk may result in dismissal of your case without further notice.*

CV-16-P-1894-NE

I.   Previous lawsuits

   A.   Have you begun other lawsuits in state or federal court(s) dealing with the same facts involved in this action or otherwise relating to your imprisonment?
        Yes ( )   No ( ✓ )

   B.   If the answer to (A) is "yes," describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuit(s) on another piece of paper, using the same outline.)

        1.   Parties to this previous lawsuit:

             Plaintiff: N/A

             Defendant(s): _____

2

2. Court (if Federal Court, name the district; if State Court, name the county) _____

_____

3. Docket number _____

4. Name of judge to whom case was assigned _____

_____

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?) _____

_____

6. Approximate date of filing lawsuit _____

_____

7. Approximate date of disposition _____

II. Place of present confinement _Limestone Correctional Facility_

    A. Is there a prisoner grievance procedure in this institution?
       Yes (✓)    No ( )

    B. Did you present the facts relating to your complaint in the state prisoner grievance procedure?   Yes (✓)    No ( )

    C. If your answer is YES:

       1. What steps did you take? _Submitted Grievance, Grievance Appeal_

       2. What was the result? _Denied_

    D. If your answer is NO, explain why not: _Denied_

3

III. Parties.

In item (A) below, place your name in the first blank and place your present address in the second blank.

A. Name of Plaintiff(s) _Benjamin Murrell_
_Limestone C.F., 28779 Nick Davis Road_
Address _Harvest, Alabama 35749_

In item (B) below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use Item (C) for the names, positions, and places of employment of any additional defendants.

B. Defendant _Juan Pricarcer_
Is employed as _Doctor of Medicine_
at _Limestone Correctional Facility for Corizon Health, Inc._

C. Additional Defendants _Hugh M. Hood_
_Regional Medical Director for Corizon Health, Inc._

IV. Statement of Claim

State here, as briefly as possible, the FACTS of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates and places. Do not give any legal arguments or cite any cases or statues. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheets, if necessary.

_See Complaint attached hereto_

4

V. RELIEF

State briefly <u>exactly</u> what you want the court to do for you. Make no legal arguments. Cite no cases or statues.

See Civil Complaint attached hereto

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 18, 2016

Benjamin Murrell #188477
SIGNATURE

ADDRESS

Limestone C.F., B-Dorm
28779 Nick Davis Road
AIS # Harvest, AL 35749

CIVIL ACTION NO. _____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

BENJAMIN MURRELL,

    PLAINTIFF,

V.

HUGH M. HOOD, INDIVIDUALLY AND IN
HIS OFFICIAL CAPACITY; IVAN PIVOVOROV,
INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY,

    DEFENDANTS.

---

# C I V I L   C O M P L A I N T

---

Pro Se   Representation By:

Benjamin Murrell #188477
Limestone C.F., B-Dorm
28779 Nick Davis Road
Harvest, Alabama 35749

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

BENJAMIN MURRELL,

    PLAINTIFF,

V.

    CIVIL ACTION NO. _____

HUGH M. HOOD; IVAN PIVOVAROV,
INDIVIDUALLY AND IN THEIR
OFFICIAL CAPACITIES,

    DEFENDANTS.

## I.  JURISDICTION & VENUE

1.  This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The Court has jurisdiction under 28 U.S.C. Section 1331, 1343(3) and 1343(4).

2.  The Northern District of Alabama is an appropriate venue for this action under 28 U.S.C. Section 1391(b)(1), because Defendants Hugh M. Hood and Ivan Pivovarov in their official capacity reside in this district.

3.  The Northern District of Alabama is also an appropriate venue under 28 U.S.C. Section 1391(b)(2), because a "substantial part of the events or omissions giving rise to the claims occurred" in this district.

## II.  PLAINTIFF

4.  Plaintiff Benjamin Murrell, is and was at all times mentioned herein a prisoner of the State of Alabama in the custody of the Alabama Department of Corrections. He is currently confined in the Limestone Correctional Facility located at 28779 Nick Davis Road in Harvest, Alabama 35749.

## III.  DEFENDANTS

5.  The Defendant Hugh M. Hood (hereinafter referred to as "Medical Director Hood") who, was at all times mentioned herein, the Associate Regional Medical Director for Corizon Health, Inc. He was and is responsible for supervising and providing support to the clinicians throughout the correctional facilities in Alabama in which Corizon is currently providing medical services through contract with the Alabama Department of Corrections. He is also responsible for approving and disproving referrals of prisoners to off-site community specialists for evaluations of surgical intervention which has been recommended by physicians employed at the prisons by Corizon.

6.  The Defendant Ivan Pivovarov (hereinafter referred to as "Dr. Pivovarov") who, was at all times mentioned herein, the on-site physician or doctor of medicine at the Limestone Correctional Facility employed with Corizon. He was responsible

the medical treatment provided to inmates at the Limestone facility and for providing assessments, including referrals to off-site community specialty physicians which include the evaluations of surgical intervention by the attending licensed Alabama physician.

7. Each Defendant is sued individually and in his official capacity. At all times mentioned in this complaint, each Defendant acted under the color of state law as an employee of Corizon Health, Inc., who contracted with the Alabama Department of Corrections.

## IV.   FACTS

8. In 2013, Plaintiff began experiencing mild to moderate pain in his upper back or spine and left shoulder, and pain and numbness that ran down his left arm with numbness in the middle three fingers on his left hand.

9. On December 26, 2013, after x-rays had been taken, Plaintiff was advised in a written response to a medical grievance appeal, that he had a bulging disc in conjunction with degenerated disc disease in his upper spine.

10. In 2014, Plaintiff was examined by the medical staff at Limestone Health Care Unit (HCU), and they began treating Plaintiff pain with non-nacortic pain medication such as indocin, and later nerotten was prescribed after the indocin was discontinued.

-3-

11. Over the course of time in 2014, Plaintiff's pain went from mild to moderate, to being more moderate to severe, and at that point, the non-narcotic pain medication prescribed to Plaintiff was having little to no effect on his pain.

12. In or about November or December of 2014, Plaintiff was seen and examined by the on-site physician, Dr. Stone, who prescribed altram medication to treat Plaintiff's pain and referred him for an MRI to be performed on his upper spine and left shoulder area.

13. In March, 2015, Plaintiff was examined by Dr. Stone and advised that the MRI showed that he had a pinched nerve in three different locations and that it would require surgery. At that point, Dr. Stone did a referral to Montgomery for Plaintiff to evaluated by an off-site specialist for possible surgery based on the MRI and her examinations. She also continued the altram medication for treatment of Plaintiff's pain and rescheduled an appointment for Plaintiff to be seen and examined by her within 30 days after that date.

14. On May 3, 2015, Plaintiff submitted a written grievance to the HCU after his altram pain medication prescription had expired leaving him with no medication to treat his pain and after over six (6) weeks had lapsed since his last appointment with Dr. Stone and no appointment had been provided him. In his written medical grievance, Plaintiff complained that his prescribed pain medication had ran out, that he was in pain

and needed the prescription refilled, and enquired as to why he had not been sent out to be examined by a surgeon.

15. In a response to his written medical grievance dated May 7, 2015, Plaintiff was advised that his pain medication is noted; that the request for a spinal surgical consult with the off-site specialist was denied; and that he would be scheduled to see either Dr. Stone or Dr. Pivovarov and to watch the newsletter for the appointment.

16. It was until June 1, 2015, that Plaintiff was seen and examined by Dr. Pivovarov. Dr. Stone was nolonger assigned to the facility. Plaintiff was advised by Dr. Pivovarov that Dr. Hood denied the request to consult with a surgeon. During Dr. Pivovarov's examination of Plaintiff, Plaintiff was directed to sit and tilt forward while Dr. Pivovarov press his hand down hard on the top of Plaintiff's head while turning it to the left and then to the right. Plaintiff was already in severe pain while being examined by Dr. Pivovarov and Plaintiff advised Dr. Pivovarov that his pain was too severe for him continue that method, because it only created more pain. At that point, Dr. Pivovarov advised Plaintiff that there is nothing wrong with his upper spine, that he was alright, and that he was not going to prescribed any pain medication nor make any referrals for Plaintiff to be seen by a specialist. At that point, Plaintiff was advised by Dr. Pivovarov, that he was finished and that Plaintiff could leave.

17. Afterwards, over the process of time, Plaintiff's medical condition became worse. The severe pain spreaded to his left shoulder blade and his right shoulder, making it very difficult for Plaintiff to lay on either his left or right side. It also experienced many sleepless nights due to the severeness of the pain with no medication to relieve the pain. Additionally, the severeness of the pain in Plaintiff's upper spine made it very uncomfortable to Plaintiff to sit for long periods, and uncomfortable for Plaintiff to sit, except for sitting in certain type of chairs. Plaintiff left shoulder and arm had become so painful, numb, and weak, that he could nolonger even carry his meal tray in his left hand, nor even use his left hand to do typing.

18. In or about April or May, 2016, Plaintiff was seen and examined by Nurse Practioner, Hooper, and at that point, Plaintiff was again prescribed indocin medication for his pain. However, this medication provided absolutely no relief of Plaintiff's pain. Plaintiff was later prescribed a muscle relaxer to use in conjunction with the indocin medication to relieve his pain, but this provided to Plaintiff only slight relief from his severe pain.

19. In or about late July or early August, 2016, Nurse Practioner, Hooper and Dr. Jerry Robins, the on-site physician met together and discussed Plaintiff's medical condition. At

that point, Plaintiff was referred by Dr. Robins to be evaluated by an off-site spinal specialist for surgical intervention.

20. On August 29, 2016, Plaintiff was escorted to be seen by the off-site spinal specialist, Dr. Freudenberger, who examined Plaintiff and read the reports from the MRI performed on Plaintiff in January, 2015. Plaintiff was advised that the MRI reports indicates that he had a pinched nerve in three different locations and it would require surgery to fix the problem. Dr. Freudenberger further advised Plaintiff that he would have to have another MRI performed due to the time that has lapsed since that MRI was performed.

21. The second MRI was performed on Plaintiff on September 12, 2016. And on September 27, 2016, Plaintiff was transported to the Crestwood Medical Center in Huntsville for the surgery to be performed. When Plaintiff talked with Dr. Freudenberger about the MRI Report, Plaintiff was advised that the reports indicates (to the best of Plaintiff's understanding of the medical terms used) that the degeneration or compression on the nerve had gotten worse since the previous MRI was performed, and that the surgery should solve the problem.

22. After the surgery, Plaintiff was transported to the SportsMed Center in Huntsville to be seen by Dr. Freudenberger on or about October 12, 2016, for a follow-up appointment.

During the appointment, Plaintiff was advised that due to the length of time the nerve was pinched, he would continue to feel pain, numbness, and discomfort, and that it would takes some time for the pinched nerve to heal and that there is no set time as to how long that will take, but that it would have to have its course.

23. Although Plaintiff has undergone surgery to his upper spine and lower neck area to correct his medical problem, Plaintiff continues to suffer with mild to moderate, and moderate to severe pains in his upper spine and lower neck area with numbness in his three fingers on his left hand, discomfort and pain while sitting on benches or chairs with no backs or certain type of chairs, and is unable to use his left arm and left hand effectively as a direct result of the surgery having been delayed by denied by Dr. Hood. Plaintiff is currently required to take a combination of prescribed medications such a Indocin 25 mg. three times a day, 2 Excedrin Migrane tablets twice a day, and a muscle relaxer three times a day to treat and manage his pain.

## V.   EXHAUSTION OF LEGAL REMEDIES

24. Plaintiff used the inmate's grievance procedure available at the Limestone HCU to try and solve the problem. On December 19, 2013, Plaintiff presented facts relating to

this complaint. In a response dated December 19, 2013, Plaintiff was advised that the need to request a follow-up with MD and to fill out a sick call slip. On December 26, 2013, Plaintiff submitted a written appeal to the denial of the grievance to the HCU Administrative Supervisor. In the response dated December 26, 2013, Plaintiff was advised that he have degenerative disc disease in his spine and that they would only treat his chronic pain with medication at this point.

25. On May 3, 2015, Plaintiff again used the inmate's grievance procedure available at the Limestone HCU to try and solve the problem, when he presented facts relating to this complaint after the on-site physician, Dr. Stone had referred Plaintiff to be evaluated by an off-site spinal specialist and his prescribed pain medication had ran out leaving him in severe pain with nothing to treat his pain. On May 7, Plaintiff was sent a response advising him that the referral was denied, that his request for pain medication was noted, and that he would be scheduled to see an on-site physician. After three weeks had lapsed from the time Plaintiff received the response to his grievance and he had received on appointment, Plaintiff submitted a grievance appeal complaining of his pain, the need to see a doctor for a renewed prescription for his pain medication, and inquired as to why his request to be evaluated by a spinal specialist was denied. The grievance

appeal was dated May 26, 2015. In a response dated May 26, 2015, Plaintiff was again advised that he had been scheduled an appointment to be seen by MD, and that the issues would be discussed at that time. On June 3, 2015, Plaintiff submitted another grievance appeal after he had been seen by Dr. Pivovarov and he was denied medication to treat his pain, leaving him in severe pain. In a response dated June 4, 2015, Plaintiff was advised that he had been seen multiple times for his chronic back pain by nurse practioners and on-site physicians, and that he's being managed appropriately and no surgical intervention has been deemed necessary of his back pain at the present time. Plaintiff was further advised that Dr. Pivovarov is treating Plaintiff's back pain by his MD judgment.

## VI.  LEGAL CLAIMS

### Count One

26.   Plaintiff reallege and incorporate by reference paragraphs 1 thru 15, paragraphs 17, 18, and paragraphs 21 thru 25. The Defendant Hugh M. Hood's acts of deliberate indifference to plaintiff's serious medical needs by denying his access or referral to be evaluated by a spinal specialist for surgical intervention, which allowed the degeneration in plaint's upper spine to cause further injury violated

plaintiff's rights, and constituted cruel and unusual punishment under the Eighth and Fourteenth Amendment to the United States Constitution.

Count Two

27. Plaintiff reallege and incorporate by reference paragraphs 1 thru 25. The Defendant Ivan Pivovarov's acts of deliberate indifference to plaintiff's serious medical needs by attempting to employ very unbearably painful techniques in examining plaintiff, while plaintiff was already suffering severe severe pain in his upper spine, then refusing to treat plaintiff's severe pain at all, causing plaintiff to suffer severe pain further, and refusing to refer him to be evaluated by an off-site spinal specialist for surgical intervention violated plaintiff's rights, and constituted cruel and unusual punishment under the Eighth and Fourteenth Amendment to the United States Constitution.

28. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein.

### VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully pray that this court enter judgment:

29. Granting Plaintiff a declaration that the acts and omissions described herein violate his rights under the Constitution and laws of the United States, and

30. Granting Plaintiff compensatory damages in the amount of $150,000 against the Defendant Hugh M. Hood, and $50,000 in punitive damages.

31. Granting Plaintiff compensatory damages in the amount of $250,000 against the Defendant Ivan Pivovarov, and $50,000 in punitive damages.

32. Plaintiff also seek a jury trial on all issues triable by jury.

33. Plaintiff also seek recovery of their costs in this suit, and

34. Any additional relief this court deems just, proper, and equitable.

D O N E on this the 18th day of November, 2016.

Respectfully submitted,

_Benjamin Murrell #188477_
Benjamin Murrell #188477

### V E R I F I C A T I O N

I have read the foregoing complaint and hereby verify

that the matters alleged therein are true, except as to matters alleged on information, understanding, and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed on this 18th day of November, 2016.

*Benjamin Murrell #188477*
Benjamin Murrell #188477